UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION



| | | |
|---|---|---|
| TINO RICARDO NEVARES,<br>TDCJ ID # 1349034,<br>SID No. 2217397,<br>Previous TDCJ Nos. 438219, 1175466<br><br>Plaintiff,<br><br>v.<br><br>SUSAN Y. SABIN, Sgt.,<br>Correctional Officer, *et al.*,<br><br>Defendants. | §§§§§§§§§§§§§§ | CIVIL ACTION NO.<br>1:08-CV-169-BI<br>ECF<br><br>Assigned to United States<br>Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Plaintiff, currently a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 on December 1, 2008 (Doc. 1). Plaintiff alleges that the Defendants, officers and employees of the French Robertson Unit of the Texas Department of Criminal Justice - Institutional Division ("TDCJ-ID"), subjected him to retaliation and discrimination, deprived him of due process, subjected him to deliberate indifference to his health and safety, and conspired against him. By order dated December 12, 2008 (Doc. 5), this case was transferred to the docket of United States Magistrate Judge Philip R. Lane for screening pursuant to 28 U.S.C. §§ 1915 and 1915A. On March 5, 2009, the court held an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and 28 U.S.C. § 1915. Plaintiff appeared at the hearing and testified in his own behalf. Plaintiff consented to having the United States Magistrate Judge conduct all further proceedings in this case under 28 U.S.C. § 636(c) (Doc. 11).

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint, as supplemented by Plaintiff's *Spears* hearing testimony and the exhibits tendered at the *Spears* hearing.

## I. BACKGROUND

In his complaint, as developed by his testimony, Plaintiff claims that:

(1) During all time periods relevant to the claims in his complaint, Plaintiff was confined to the Robertson Unit.

(2) On February 13, 2008, Plaintiff refused housing with inmate Randy Dixon.

(3) C.O. John R. Jones called the administration building to inform officials of Plaintiff's refusal of housing. Jones was instructed to move an inmate named Hayden into the cell with Dixon.

(4) Hayden said that he would not move into a cell with Dixon because he had already had serious problems with Dixon.

(5) C.O. Doyle L. Lea wrote Plaintiff a disciplinary case for refusing a direct order to move into the cell with Dixon. Lea did not write a case against Hayden. The case was served by Sgt. Susan Y. Sabin.

(6) Lea gave false testimony in support of the disciplinary case.

(7) On February 14, 2008, Sabin asked Plaintiff for a statement regarding the case that he was given for refusing to move into the cell with Dixon. Plaintiff told Sabin that Dixon had a reputation for threatening or beating his cell mates. Plaintiff noted that Hayden had also refused housing with Dixon. Sabin told Plaintiff that Hayden had refused housing with Dixon because they had already been housed together.

(8) Sabin did not informally resolve the case nor did she conduct an investigation of Plaintiff's claims regarding Dixon's reputation.

(9)     Plaintiff, an Hispanic, was treated differently than a black inmate for essentially the same disciplinary violation.

(10)    Sabin convinced two inmates with whom he works to harass him.

(11)    Plaintiff asked Jones to testify on his behalf at his February 20, 2008, disciplinary hearing. Jones did not personally appear, but he provided testimony which was not advantageous to Plaintiff. Jones gave false testimony. Jones and Sabin placed his life in danger and subjected him to discrimination and retaliation.

(12)    Plaintiff saw Sabin speaking with Food Service Manager Bonnie S. Bobo on several occasions while looking in Plaintiff's direction. Bobo conspired against him and placed his life in danger.

(13)    On April 24, 2008, Plaintiff signed in the law library roster after Sgt. Harold Robinson told him not to. Plaintiff was given a disciplinary case for refusing a direct order.

(14)    Plaintiff was escorted to a pre-hearing detention cell on April 27, 2008, after filing a life endangerment investigation request. Robinson walked down the run near Plaintiff's cell and told some inmates that Plaintiff was a snitch and a racist. Robinson placed his life in danger, discriminated against him, and subjected him to retaliation.

(15)    On May 6, 2008, Plaintiff overheard Officer John E. Ford telling another inmate that Plaintiff was a racist and a snitch, thereby placing his life in danger and subjecting Plaintiff to retaliation and discrimination.

(16)    Plaintiff filed a life endangerment investigation request alleging that two inmates were propositioning him. Warden Cary J. Cook told Plaintiff that he was not given the appropriate punishment after the February 20, 2008, major disciplinary case and reassigned Plaintiff to work in the fields, rather than in the kitchen. Plaintiff was also removed from his vocational class.

(17)  Cook failed to protect him and subjected him to discrimination and retaliation.

Plaintiff is seeking declaratory and injunctive relief and an award of damages.

## II.  ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted.  These provisions thus apply to this *in forma pauperis* prisoner civil rights action. *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States,* 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the case is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault,* 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

The court has reviewed Plaintiff's arguments and claims in his complaint, his supplementary documents, and his testimony at the *Spears* hearing to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

A. **Plaintiff's Due Process, Retaliation, and Discrimination Claims**

Plaintiff alleges that Sabin discriminated and retaliated against him and placed his life in danger. Plaintiff alleges that Lea and Sabin discriminated against him and deprived him of equal protection of the laws by writing a disciplinary case against him and by giving a case for refusing housing with Dixon, although another inmate, who also refused housing with Dixon, was not given a case. Plaintiff testified that Sabin erred by failing to informally resolve the case, which was brought by Lea. Plaintiff alleges that Lea retaliated by making a statement which was false in connection with the disciplinary case, as did Jones with regard to a separate disciplinary case, and generally alleges that Ford, Robinson, and Cook retaliated against him.

Plaintiff argues that Sabin deprived him of due process because she failed to informally resolve the disciplinary case. In the context of the disciplinary hearing process, a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Inmates who are charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Such liberty interests may emanate from either the Due Process Clause itself or from state law. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989). Liberty interests arising from state law are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). Only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may

qualify for constitutional protection under the Due Process Clause. *Id.* at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995). The protections afforded by the Due Process Clause thus do not extend to "every change in the conditions of confinement" which adversely affects prisoners. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997).

Due process requires that the prisoner receive (1) a twenty-four hour advance written notice of the hearing on the claimed violation; (2) an opportunity to be heard, including the ability to call witnesses and present evidence in his defense, when consistent with institutional safety and correctional goals; and (3) a written statement of the fact-finder detailing the evidence relied upon and the reasons for the disciplinary action. *See Wolff*, 418 U.S. at 563-67; *see, e.g., Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) (Lack of due process claim fails where claimant does not explain how the alleged claim prejudiced the preparation of his defense.). Due process also requires at a minimum that "some evidence" in the record supports the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985); *Morgan v. Dretke*, 433 F.3d 455, 457 (5th Cir. 2005); *see, e.g., Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998) (per curiam) (inmate's civil rights suit alleging that no evidence supports disciplinary action against him properly dismissed as record revealed that "some evidence" supported charge). The "some evidence" standard is extremely deferential. *Morgan*, 433 F.3d at 457. The "some evidence" requirement was met where the correction officer's testimony and the inmate's own statement about striking another inmate constituted "some evidence" to support the counsel's decision to punish the inmate for fighting. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam).

Here, Plaintiff argues that Sabin erred by failing to informally resolve the disciplinary case in the course of her investigation. Federal courts do not "second-guess" the findings and determinations of prison disciplinary committees. The Constitution does not demand "error-free

decision making . . . ." *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984) (quoting *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983)). The Fifth Circuit has recognized that "[i]f the disciplinary proceeding was otherwise fair and adequate, the opportunity that it afforded [the plaintiff] to clear himself of misdeeds which he did not commit sufficed." *Collins*, 743 F.2d at 253-54. In *Collins* the Court addressed a situation in which the plaintiff claimed that he was improperly charged with disciplinary offenses that he did not commit. *Id.* The Court concluded that "[t]his claim standing alone and as made, does not state a deprivation of due process" because plaintiff was afforded the appropriate process to which he was entitled at the disciplinary hearing. *Id.* at 253.

Plaintiff's allegations, accepted as true, fail to demonstrate that Plaintiff was deprived of any process to which he was entitled. Indeed, Plaintiff's allegations fail to demonstrate that any particular process or constitutional right was implicated in Sabin's determination to not informally resolve the case. Because Plaintiff's complaint may be construed to include a claim that Doyle initiated disciplinary proceedings against him without probable cause or that Sabin refused to informally resolve the disciplinary case without making a determination of sufficiency of evidence to support such case, the court notes that malicious prosecution no longer provides an independent basis for a section 1983 claim in the Fifth Circuit. *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) ("[N]o . . . freestanding constitutional right to be free from malicious prosecution exists."). Thus, an inmate's claim that an officer initiated disciplinary proceedings against him without probable cause does not state a claim. *Id.*

Plaintiff alleges that Sabin, Lea, Ford, Jones, Robinson, and Cook subjected him to discrimination. To succeed on his Equal Protection claim, Plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins v.*

*Kaspar,* 393 F.3d 559, 566 (5th Cir. 2004) (citing *Muhammad v. Lynaugh,* 966 F.2d 901, 903 (5th Cir. 1992)). Plaintiff's allegations fail to demonstrate purposeful discrimination and fail to demonstrate that he was similarly situated to another inmate who was treated differently on the same occasion. Plaintiff's own testimony demonstrates that he had not been previously housed with Dixon. Plaintiff's allegations fail to state a cognizable constitutional equal protection claim, and this claim against all Defendants should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

Plaintiff alleges that Sabin, Jones, Ford, Lea, Robinson, and Cook retaliated against him. To sustain a § 1983 retaliation claim, Plaintiff must establish: (1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995)). The plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Tighe v. Wall,* 100 F.3d 41, 42 (5th Cir. 1996). The inmate must allege more than his personal belief that he is the victim of retaliation. *Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir. 1999). Mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.* The plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods,* 60 F.3d at 1166. Plaintiff is required to "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

Plaintiff relies upon his conclusory claim of retaliation with regard to Sabin, Jones, Ford, Lea, and Robinson. His allegations fail to demonstrate that he exercised a specific constitutional right leading to the alleged retaliatory adverse acts. Plaintiff alleges that Sabin may have spoken with

Bobo after he complained about the disciplinary case for refusing housing with Dixon. He alleges that the inmates with whom he worked in the kitchen harassed him and that he filed a life endangerment claim regarding one of the inmates about two months after Sabin filed his case against him. Plaintiff's allegations fail to demonstrate either a retaliatory motive or a chronology of events from which retaliation may be plausibly inferred. Plaintiff's allegations also fail to demonstrate that the adverse acts would not have occurred but for Plaintiff's exercise of a specified constitutional right.

Plaintiff alleges that Cook retaliated against him by changing his job after a hearing before the Unit Classification Committee on Plaintiff's claims of life endangerment. An inmate has neither a protected property nor liberty interest in his custodial classification." *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988) (internal citations omitted). Plaintiff also does not have a constitutionally cognizable liberty interest in his security classification. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). The court notes that a prisoner has no constitutional right to a specific work assignment. *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir. 1989). Moreover, in his claims against Cook, Plaintiff's allegations fail to demonstrate that he exercised a protected constitutional right which resulted in a retaliatory adverse act.

The court has considered the claims in Plaintiff's complaint, as supplemented by his testimony, and finds that Plaintiff's claims of retaliation against Sabin, Jones, Lea, Robinson, and Cook lack an arguable basis in law or fact and should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

### B. Plaintiff's Conspiracy Claims

Plaintiff alleges that Bobo conspired to harm him. He alleges that he observed Sabin speaking with Bobo and that Bobo may have relayed messages to Ford indicating that Sabin had spoken to her. He alleges that Ford may have thus decided to retaliate against Plaintiff.

To prove a conspiracy claim cognizable under § 1983, Plaintiff is required to show that the Defendants had "an agreement to commit an illegal act which resulted in the plaintiff's injury." *Hay v. City of Irving, Tex.*, 893 F.2d 796, 799 (5th Cir. 1990) (citing *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982)). Conclusory allegations of conspiracy will not support a claim under § 1983. *Wilson v. Budney*, 976 F.2d 958 (5th Cir. 1992).

Here, Plaintiff's extensive allegations fail to demonstrate that Bobo and any of the other Defendants acted together to commit an illegal act against him or to deprive him of his rights. Plaintiff's relies entirely on a conclusory allegation of a conspiracy and nebulous allegations of Sabin talking to Bobo who may have relayed the discussion to Ford who then retaliated against Plaintiff. Even accepted as true, these allegations are insufficient to state a claim for conspiracy under § 1983, and such claim should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

### C. Deliberate Indifference to Health and Safety

Plaintiff alleges that all of the Defendants put his life in danger, thereby demonstrating deliberate indifference to his health and safety and subjecting him to cruel and unusual punishment.

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

It is recognized that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). The protections afforded prisoners specifically include the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 318, (1986). Punishment rises to the level of cruel and unusual only where it involves an "'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

It is well settled that the Eighth Amendment to the Constitution protects inmates from "conditions so serious as to deprive [them] of the minimal measure of life's necessities." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). In its prohibition of cruel and unusual punishment, the Eighth Amendment to the Constitution imposes restraints on prison officials who must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517 (1984). "'Prison officials have a duty . . . to protect prisoners from [**5] violence at the hands of other prisoners.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) *(quoting Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)).

The Supreme Court, in *Farmer v. Brennan*, defined the proper test for determining deliberate indifference in prison conditions cases. 511 U.S. 825 (1994). A prison official may violate the Eighth Amendment if he is deliberately indifferent to an inmate's health or safety. *Id.* at 834. In this context, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 839-40. Thus, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Justice*,

239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer*, 511 U.S. at 838). A claimant, however, may rely on circumstantial evidence indicating that because the risk was obvious, the official must have known of the risk to the inmate. *See Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

"To prevail on a section 1983 failure to protect claim, a prisoner must demonstrate that 'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones,* 188 F.3d at 326 (quoting *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998)). In a failure to protect claim, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837 (quoted in *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995)). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate and fail to protect the inmate from that harm. *Id.* at 839-40. In asserting a failure to protect claim, a plaintiff may also rely on circumstantial evidence indicating that because the risk was obvious, the official must have known of the risk to the inmate. *See Hope*, 536 U.S. at 738. Mere negligence or neglect, however, does not constitute deliberate indifference. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (quoting *Farmer*, 511 U.S. at 834). The test for deliberate indifference carries a significantly high burden for the Plaintiff to overcome. *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998)).

"The Constitution 'does not mandate comfortable prisons' . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Wilson*

*v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) (internal citation omitted). The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by and facilities available to prisoners. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). However, the Eighth Amendment does not afford protection against mere discomfort or inconvenience. *Id.*

The Supreme Court has defined the requirements for making an Eighth Amendment claim as containing both objective and subjective components. *Farmer,* 511 U.S. at 834. The objective component requires proof that the deprivation was sufficiently serious. *Id.* To meet the objective component, "extreme deprivations are required . . . ." *Davis v. Scott,* 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)). Under a "totality of conditions test," conditions of confinement must not impose the wanton and unnecessary infliction of pain. *Austin v. Johnson,* 328 F.3d 204, 209 (5th Cir. 2003).

The subjective component is met by a prison official who is deliberately indifferent to an inmate's health or safety. In this context, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Adames*, 331 F.3d at 512. In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate and fail to protect the inmate from that harm. *Farmer*, 511 U.S. at 839-40. Thus, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not,' is insufficient to show deliberate indifference." *Domino,* 239 F.3d at 756 (quoting *Farmer,* 511 U.S. at 838).

"To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (quoting *Farmer*, 511 U.S. at 834). The "applicable *mens rea* of deliberate indifference demands subjective

knowledge of a substantial health risk." *Gobert v. Caldwell*, 463 F.3d 339, 348 (5th Cir. 2006). Thus, "[t]he deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the [ ] officials were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (citing *Farmer*, 511 U.S. at 847); *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994)). Prison officials must "know of and disregard [the] excessive risk to inmate health or safety." *Hall*, 190 F.3d at 697 (citations and brackets omitted). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* (quoting *Farmer*, 511 U.S. at 834).

The deliberate indifference requirement is more than mere negligence. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Mere negligence or neglect does not constitute deliberate indifference. *Fielder*, 590 F.2d at 107.

Plaintiff alleges that Sabin spoke with two inmates with whom he worked. He alleges that thereafter, one of the inmates would bump into him and the other sexually propositioned him. Plaintiff complained about the inmate who proposed that they engage in sexual activities and was thereafter threatened by that inmate. Plaintiff filed a life endangerment investigation request. He alleges that Bobo may have spoken with Ford about his grievances against Sabin. He alleges that Ford told other inmates that he is a racist and a snitch. Plaintiff testified that he filed four life endangerment investigation requests after being written up by Sabin in February 2008. These requests were about the inmates with whom he worked in the kitchen and were filed around May 2008, sometime in April 2008, and in March 2009. In February 2008 Plaintiff was returned to the

general population some four days after being placed in a pre-hearing detention cell and being questioned by the safety sergeant. Plaintiff did not hear back from the administration after the other investigations. Plaintiff has written to the warden asking that inmate Dixon, with whom Plaintiff refused to be housed, be transferred to another unit. Plaintiff has reported that inmates call Plaintiff a snitch.

"An inmate has neither a protectable property nor liberty interest in his custodial classification." *Moody*, 857 F.2d at 257-58 (internal citations omitted); *see Wilson*, 976 F.2d at 958. Moreover, Plaintiff does not have a constitutionally cognizable liberty interest in his security classification. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). The protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" which adversely affects prisoners. *Madison*, 104 F.3d at 767.

In *Neals* the Fifth Circuit addressed a § 1983 failure to protect claim by an inmate who alleged that prison officials had "wrongly denied his requests to be reclassified for protective custody, safekeeping status, or for a unit transfer, all in disregard of his safety." 59 F.3d at 533. The Court noted that because a prison inmate does not have a protected liberty or property interest in his custodial classification, an inmate's disagreement with a classification is insufficient to establish a constitutional violation. *Id.* (citing *Wilson*, 976 F.2d 957). Plaintiff's claims regarding his life endangerment investigation requests and the actions of the Unit Classification Committee lack an arguable basis in law or fact, given that inmates do not have a protected liberty or property interest in their custodial classification. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

Moreover, Plaintiff's allegations fail to demonstrate that the Defendants were deliberately indifferent to his health or safety. Plaintiff's testimony establishes that the Defendants and Robertson Unit officials took action to consider his safety, moved him to 11-Building, placed him

on transit status, and recommended a unit transfer. Officials also told him to report any problems or threats. Plaintiff's claims against the Defendants for failing to protect him and for deliberate indifference to his health and safety arising from their denial of his request for a transfer of himself or of Dixon should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

In order to state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in a constitutional violation or whose acts were causally connected to the constitutional violation alleged. *Woods*, 51 F.3d at 583. Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F. 2d 381, 382 (5th Cir. 1983). Prison officials "cannot be automatically held liable for the errors of their subordinates." *Adames*, 331 F.3d at 513. Supervisory officials may be held liable only if: "(i) they affirmatively participate in the acts that cause constitutional deprivations; or (ii) [they] implement unconstitutional policies that causally result in plaintiff's injury." *Mouille v. City of Live Oak, Tex.*, 977 F. 2d 924, 929 (5th Cir. 1992). Vicarious liability does not apply to § 1983 claims. *Pierce v. Tex. Dep't of Crim. Justice, Institutional Div.*, 37 F. 2d 1146, 1150 (5th Cir. 1994). Plaintiff's claims against Jones, Lea, and Cook of deliberate indifference to his health and safety are not based upon any personal involvement by these individuals. Insofar as Plaintiff claims that Cook failed to resolve his complaints in the manner desired, Plaintiff does not have a federally protected liberty interest in having his complaints resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

Plaintiff's allegations also fail to demonstrate that the Defendants knew of a substantial risk of serious harm to Plaintiff and ignored such risk. Plaintiff alleges that Ford and Robinson called him a racist and a snitch. It is noted that verbal harassment, without more, cannot amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). "Mere threatening

language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983), *cert. denied*, 464 U.S. 998, 104 S. Ct. 499, 78 L. Ed. 2d 691 (1983). *See also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973) (The use of words, no matter how violent, does not comprise a § 1983 violation.). In *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002), the Fifth Circuit held that mere verbal abuse is not actionable under § 1983 due to the absence of a physical injury. Plaintiff's allegations fail to demonstrate that he has sustained any physical injury as a result of the alleged failure to protect and deliberate indifference to his health and safety; thus, these claims are not actionable.

Under § 1997e(e), "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (citing 28 U.S.C. § 1997(e)). "[T]he 'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.'" *Harper*, 174 F.3d at 719 (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). The Fifth Circuit has found an injury insufficient to support an Eighth Amendment claim where there is no physical injury or where it is extremely minor. *Harper*, 174 F.3d at 719; *Siglar*, 112 F.3d 191. In *Siglar* the plaintiff's ear was bruised and sore for three days, but he did not seek or receive medical treatment for any physical injury resulting from the incident, and he did not allege any long-term damage to his ear. 112 F.3d at 193. The Court found that this constituted a *de minimis* injury. *Id.* In *Harper* the Court found no injury where the plaintiff himself did not allege any physical injury. 174 F.3d at 719. To support an Eighth Amendment claim, a prisoner must sustain "a more than *de minimis* physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). In this case Plaintiff does not allege that he

sustained any physical injury as a result of the alleged deliberate indifference to his health and safety. Plaintiff's allegations and testimony demonstrate that he received no physical injury that was more than *de minimis* and is thus insufficient to support his claim for money damages for psychological stress. *See Geiger*, 404 F.3d at 375; *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). Therefore, Plaintiff's claims for damages and for cruel and unusual punishment in the form of deliberate indifference to his health and safety should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

D.    **Official Capacity Claims**

Plaintiff has not indicated whether he is suing each of the Defendants in his or her individual or official capacities. The court has already addressed the claims against each of the Defendants in their individual capacities above, finding that Plaintiff has failed to state a claim upon which relief may be granted regarding each of the claims against each Defendant in his or her individual capacities.

Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991)). A state's sovereign immunity is not waived for claims pursuant to section 1983. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)). Moreover, the State of Texas has not consented to this suit. *Id.* (citing *Emory v. Tex. State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984)). As an instrumentality of the state, the TDCJ-ID is immune from a suit for money damages under the Eleventh Amendment. *Talib*, 138 F.3d at 213. Since claims against state employees in their official

capacities are the equivalent of suits against the state, the Eleventh Amendment immunity thus extends to TDCJ officers acting in their official capacities. *Aguilar*, 160 F.3d at 1054.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity noting that a state cannot confer authority on its officers to violate the Constitution or federal law. *See Aguilar*, 160 F.3d at 1054. However, under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)). Plaintiff's allegations fail to demonstrate any such policy and fail to demonstrate any constitutional violation. Thus, Plaintiff fails to state a claim against the Defendants in their official capacities, and any such claims should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's claims for deprivation of due process, deprivation of equal protection of the laws, retaliation, cruel and unusual punishment in the form of deliberate indifference to his health and safety, and for conspiracy, against all Defendants, are **DISMISSED WITH PREJUDICE AS FRIVOLOUS**;

2. Plaintiff's claims for money damages are **DISMISSED WITH PREJUDICE AS FRIVOLOUS**;

3. To the extent that Plaintiff asserts claims against any of the Defendants in his or her official capacity, such claims lack an arguable basis in law or fact and are **DISMISSED WITH PREJUDICE AS FRIVOLOUS**; and

4. Any pending motions are **DENIED**.

Judgment shall be entered accordingly. This dismissal shall count as a qualifying dismissal under 28 U.S.C. § 1915(g) and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996). Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and to any attorney of record by first class mail or electronic notification.

**SO ORDERED.**
DATED this 7th day of May, 2009.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**